IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
(Eastern Division)

| | | |
|---|---|---|
| In re: | * | |
| The R.C.A. Rubber Company | * | Case No. 16-52757 - AMK |
| Debtor | * | Chapter 11 |
| | * | Judge Alan M. Koschik |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTOR'S MOTION FOR AN ORDER: (A) APPROVING BIDDING PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; (B) AUTHORIZING AND SCHEDULING AN AUCTION; (C) SCHEDULING HEARING FOR APPROVAL OF THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE SUCCESSFUL BIDDER; (D) APPROVING PROCEDURES AND SETTING DEADLINES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING CURE AMOUNTS RELATING THERETO; (E) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (F) GRANTING OTHER RELATED RELIEF**

The R.C.A. Rubber Company, the debtor and debtor in possession (the "Debtor"), by counsel, moves, pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, for the entry of an Order, the proposed form of which is attached as **EXHIBIT 1** (the "Bid Procedures Order"): (a) approving bidding procedures for the sale of substantially all of the Debtor's assets; (b) setting a date for and authorizing an auction (the "Auction") to sell substantially all of the Debtor's assets; (c) scheduling a hearing (the "Sale Hearing") for approval of a sale of the Debtor's assets free and clear of liens, claims, encumbrances and other interests, and the assumption and assignment of certain executory contracts and unexpired leases; (d) approving procedures and setting deadlines for the assumption

1

and assignment of executory contracts and unexpired leases, including cure amounts relating thereto; and (e) approving certain deadlines and the form, manner and sufficiency notice of the foregoing; and (f) granting other related relief (the "Motion"). In support, the Debtor represents as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are §§ 105, 363, 365, 503, 1107 and 1108 of chapter 11 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Ohio – Eastern Division (the "Local Rules").

**The Commencement of the Bankruptcy Case**

4. On November 18, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

5. The Debtor is operating its business and managing its properties as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

6. As of the date of this Motion, no official committee of unsecured creditors (the "Committee") has been appointed by the Office of the United States Trustee for the Northern District of Ohio (the "U.S. Trustee") pursuant to § 1102(a)(1) of the Bankruptcy Code.

## Company Background

7. The Debtor is an Ohio corporation and since the early 2000's has been owned by the current majority shareholder and remaining slate of shareholders.

8. The company was founded in 1931 as a manufacturer of rubber products, primarily used in the floor coverings of commercial institutions and transit vehicles.

9. As of the Petition Date, the Debtor employed approximately 80 employees, of which approximately 20 are salaried and approximately 60 are hourly. The Debtor's hourly employees are represented by a labor union.

10. The Debtor's manufacturing facility is located at 1833 East Market Street, Akron, Ohio 44305. The Debtor rents a warehouse facility in the general vicinity of its manufacturing facility to store raw materials.

11. For fiscal year 2016 (ending June 30), the Debtor recorded net sales of $11.5 million with a loss from operations of ($91) thousand. For fiscal year 2015, the Debtor generated net sales of $12.1 million and had a profit from operations of $686 thousand. The decline in profitability in fiscal year 2016 was primarily attributable to a general loss of overall volume and specifically the beginning effects of a loss of a significant customer within the transit line of business.

12. As of the fiscal year end June 30, 2017, the Debtor had total net assets of approximately $3.89 million, comprising Cash of $82K, Trade Receivables of $912K, Inventories of $1,646K Other Current Assets of $89K, Gross Fixed Assets of $9,046K less Accumulated Depreciation of ($7,922) arriving at a Net Fixed Asset value of $1,124 and Other Long-Term Assets of $43K.

3

The R.C.A. Rubber Company – Sale Motion

16-52757-amk    Doc 111    FILED 12/04/17    ENTERED 12/04/17 23:01:00    Page 3 of 11

13. A combination of factors and events has negatively impacted and continue to adversely affect the Debtor's business operations and its financial condition. The Debtor's current weakened and worsening financial condition stems from, among other things: (i) fluctuating and higher base raw material prices; (ii) margin compression; (iii) a continual growing obligation to fund contributions to its pension plan and (iv) delayed capital investment in equipment and production processes, resulting in increased production costs and inefficiencies. As a result, the Debtor is suffering a liquidity crisis and continues to suffer major cash flow problems.

14. In September 2017, due to filed objections [Dkt.'s #79, #80 and #81] to the Debtor's proposed plan of reorganization [Dkt. #72], the Debtor hired Shared Management Resources, Ltd. as its Financial Consultant ("FC"). The FC has conducted extensive due diligence into the Debtor's financial condition, has explored various strategies with management for improving the company's performance, and has assisted and continues to assist management in restructuring the current operations of the business.

15. The Debtor, in consultation with its advisors, has determined offering the assets of the business for sale as a going concern represents the best option presently available to maximize value for creditors and preserve employee jobs. The FC has prepared a Liquidation Analysis of the Debtor which is based on independent appraisals of the real estate and the machinery & equipment, while the remaining assets, primarily consisting of trade accounts receivables and inventory have been evaluated by the FC for their potential realizable value in a liquidation scenario. The value derived by the Liquidation Analysis will be used as a floor for approving Qualified Bids that are received through this process. Absent a sale, the Debtor most likely will have to terminate its employees and begin the wholesale liquidation of its assets to the detriment of the estate and its creditors.

4

The R.C.A. Rubber Company – Sale Motion

16-52757-amk    Doc 111    FILED 12/04/17    ENTERED 12/04/17 23:01:00    Page 4 of 11

## The Proposed Sale Process

16. The FC has been accumulating relevant Debtor documents to be used in the performance of due diligence by interested parties (establishing a data room). Several calls have been placed to Private Equity firms, on a no-name basis of the Debtor, to gauge interest levels. A matrix of competitors of the Debtor is being developed to begin the process of contacting the appropriate person(s), to explore their interest in evaluating an acquisition of the Debtor's assets, once the sales process has been approved by the Court. An introductory (teaser) letter has been prepared for use in contacting interested parties to begin the marketing process which will be followed up with the signing of a Non-Disclosure and Confidentiality Agreement, allow the interested party to gain access to the Virtual Data Room and Debtor personnel in order to conduct due diligence. The Debtor will carry out its duties under the Bidding Procedures in the best interest of the estate. In addition, the Debtor has agreed to share with the Pension Benefit Guaranty Corporation ("PBGC") all relevant Debtor documents that will be available to interested parties and all bids received by the Debtor.

## Approval of Bidding Procedures

17. The Debtor submits that the Bidding Procedures, attached as **EXHIBIT 2,** are fair and reasonable and should be approved. The Bidding Procedures are designed to provide an organized system for the receipt and review of bids from potential purchasers with an ability to close on the sale of the Assets and to maximize value to the Debtor's estate. The requirement for a deposit and evidence of financial wherewithal is designed to confirm that Auction participants are *bona fide* bidders with the ability and desire to consummate any proposed transaction.

18. The Bidding Procedures are also designed to ensure that the Auction is conducted in a timely, fair and orderly manner. The Debtor is requesting that the Auction be

5

The R.C.A. Rubber Company – Sale Motion

16-52757-amk    Doc 111    FILED 12/04/17    ENTERED 12/04/17 23:01:00    Page 5 of 11

scheduled at the law offices of Brennan, Manna & Diamond LLC, 75 East Market Street, Akron, Ohio 44308 on a date no later than seven (7) days after the Bid Deadline. The Debtor believes the requested timing strikes the appropriate balance between affording potential bidders a sufficient opportunity to bid on the one hand, and tailoring the process to the needs of the Debtor on the other.

19. The Debtor, after consultation with PBGC, has proposed the following schedule to facilitate the contemplated sale process:

| | |
|---|---|
| **March 16, 2018** | **Deadline to submit qualified bids** |
| **March 21, 2018** | **Auction, if necessary.** |
| **March 27, 2018** | **Sale Hearing** |

20. A debtor may sell, after notice and a hearing, its assets outside the ordinary course of business. 11 U.S.C. § 363. Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

21. The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest and best return

for a debtor's estate.  The Debtor submits that the adoption of the Bidding Procedures will afford the Debtor the opportunity to subject the Assets to competitive bidding above a floor price for the Assets, which has been established at the Net Realizable Value within the developed Liquidation Analysis.  The Bidding Procedures, in the Debtor's opinion, will ensure the Debtor receives the highest or otherwise best offer for its assets and will maximize the value of the Assets for the Debtor's estate.

**Procedures for the Assumption and Assignment of Assumed Contracts**

22. At the closing, the Debtor intends to assume and assign to the Successful Bidder (as defined below), certain executory contracts and unexpired leases (the "Assumed Contracts") to be identified in the Cure Notice (as defined below) (*i.e.*, the Assumed Contracts).[1] The list of Assumed Contracts will be attached to the Cure Notice, provided, however, the bidder submitting the highest or best bid (the "Successful Bidder") may add to the list of Assumed Contracts (so long as the Debtor files and serves a Cure Notice on each affected contract counterparty within ten (10) calendar days before the Sale Hearing), and may remove any executory contract or lease from the list of Assumed Contracts until seven (7) calendar days prior to the closing of the sale.

23. The Debtor proposes to serve a Notice (the "Cure Notice"), in substantially the form attached hereto as **EXHIBIT 3**, on the counterparties to the Assumed Contracts no later than three (3) business days after entry of the Order approving the Bidding Procedures.  The Cure Notice also will identify the amounts, if any, that the Debtor believes are owed to each of the counterparties to the Assumed Contracts in order to cure any defaults that exist under such contract

---

[1] The inclusion of any agreement in the list of Assumed Contracts does not constitute an admission by the Debtor that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement included in the list of Assumed Contracts.

(the "Cure Costs"). The Debtor will state in the Cure Notice the date by which any objection to the Cure Costs or the assumption and assignment of the Assumed Contract (including with respect to adequate assurance of future performance) must be filed and served (the "Cure Objection Deadline"), which the Debtor proposes to be February 16, **2018 at 4:00 p.m. (EST)**. If a contract or lease is assumed and assigned pursuant to the Court's order approving same, then unless the affected counterparty properly files and serves an objection to the Cure Costs contained in the Cure Notice, the counterparty will receive at the time of the closing (or as soon as reasonably practicable thereafter), the Cure Costs as set forth in the Cure Notice, with payment made pursuant to the terms of the asset purchase agreement with the Successful Bidder. If an objection is timely filed by a counterparty to an Assumed Contract with respect to the amount of the Cure Costs set forth in the Cure Notice, the Debtor proposes that such objection must set forth a specific default under the Assumed Contract and claim a specific monetary amount that differs from the amount (if any) specified by the Debtor in the Cure Notice or, alternatively, state why the counterparty believes any Cure Costs are owing, and state the basis for any other objection to the assumption and assignment of the Assumed Contract.

24. The Successful Bidder shall assume and be responsible for payment of any Cure Costs that may be owed to any counterparty to the Assumed Contracts in accordance with the terms of its asset purchase agreement. The Successful Bidder shall be responsible for satisfying any requirements regarding adequate assurances of future performance that may be imposed under § 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contracts. The Debtor proposes that the Court make its determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to § 365(b) of the

Bankruptcy Code at the Sale Hearing. The Debtor further proposes that Cure Costs disputed by any counterparty be resolved by the Court at the Sale Hearing.

25. Except to the extent otherwise provided in the agreement with the Successful Bidder, subject to the payment of any Cure Costs, the Successful Bidder, as assignee of an Assumed Contract, will not be subject to any liability to the assigned contract counterparty that accrued or arose before the closing date of the sale of the Assets and the Debtor shall be relieved of all liability accruing or arising thereafter pursuant to §365(k) of the Bankruptcy Code.

### Notice of Bidding Procedures, Auction and Sale Hearing

26. The Debtor requests that the Court schedule the Sale Hearing on or about **March 27, 2018**. The Debtor proposes that objections, if any, to the Sale Motion be filed by **4:00 p.m. (EST)** on **March 23, 2018.**

27. The Debtor requests that the Court approve the manner of notice of the Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached hereto as **EXHIBIT 4** (the "Sale and Bidding Procedures Notice"), which the Debtor will serve on the following parties: (a) the U.S. Trustee; (b) the 20 largest unsecured creditors; (c) the Trustees of the Pension Plan; (d) all known counterparties to the Assumed Contracts; (e) all entities known to have expressed an interest in bidding on the Assets; (f) the United States Attorney's Office for the Northern District of Ohio; (g) PBGC; (h) the state taxing authorities in Ohio and the Internal Revenue Service; (i) the state attorney general of Ohio; (j) the U.S. Department of Labor-OSHA; (k) the Ohio Occupational Safety and Health (OOSH); and (l) all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 9010(b) as of the date of entry of the Bidding Procedures Order (collectively, the "Sale and Bidding Procedures Notice Parties").

28. The Debtor also proposes to serve a Notice (the "Creditor Notice") substantially in the form attached hereto as **EXHIBIT 5** on all known creditors of the Debtor.

29. Additionally, the Debtor proposes to serve the Sale and Bidding Procedures Notice and the Creditor Notice within three (3) business days from the date of entry the Bidding Procedures Order, by first-class mail, postage prepaid, on the appropriate parties as described above. Both the Sale and Bidding Procedures Notice and the Creditor Notice will provide that any party that has not received a copy of this Motion or the Bidding Procedures Order that wishes to obtain a copy of such documents may make such a request, in writing, to Brennan, Manna & Diamond, LLC, 75 East Market Street, Akron, Ohio 44308, Attention: Michael A. Steel Esq.

30. Assuming that the Court approves the schedule proposed in this Motion, the Debtor submits that no other or further notice should be required. The Debtor submits that such notice is sufficient, and requests that the Court find that no further notice of the relief requested herein is required.

## Sale Hearing

31. At the Sale Hearing, the Debtor will seek Court approval of the sale of the assets to the Successful Bidder, free and clear of all liens, claims and encumbrances pursuant to § 363(f) of the Bankruptcy Code (other than any permitted encumbrances) with all such liens, claims, encumbrances and interests to attach to the proceeds of the sale, except as otherwise provided, with the same validity and in the same order of priority as they attached to the assets prior to the sale, including the assumption by the Debtor and assignment to the Successful Bidder of the Assumed Contracts pursuant to § 365 of the Bankruptcy Code. The Debtor will present additional evidence, as necessary, at the Sale Hearing and submit that the relief sought herein,

including the sale of the Assets and related assumption and assignment of the Assumed Contracts is fair, reasonable and in the best interest of the Debtor's estate.

### Relief Requested

32. Pursuant to this Motion, the Debtor requests that the Court, among other things: (a) approve the Bidding Procedures for the sale of substantially all of the Debtor's assets, (b) authorizing and scheduling an auction; (c) scheduling a hearing for approval of the sale of the Assets free and clear of liens and the assumption of certain executory contracts and unexpired leases to successful bidder; (d) approving procedures and setting deadlines for the assumption and assignment of executory contracts and unexpired leases, including cure amount relating thereto and (e) approve certain deadlines and the form, manner and sufficiency of the Sale and Bidding Procedures Notice, the Creditor Notice and the Cure Notice.

**WHEREFORE**, the Debtor requests that the Court enter an order, substantially in the form filed contemporaneously with this Motion, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated: December 4, 2017
/s/ *Michael A. Steel*
Michael A. Steel    Bar No. 0072367
Brennan, Manna & Diamond, LLC
75 East Market Street
Akron, Ohio 44308
Telephone: (330) 374-7471
Facsimile:   (330) 374-7472
Email: masteel@bmdllc.com
*Counsel for Debtor and Debtor-in-Possession*